### GEORGE C. PAINE *v.* HALL SAFE AND LOCK COMPANY.

1. DISTRESS FOR RENT. *Property claimed by third person.   Remedy under* § 1317, *Code of* 1880.   *Replevin.*

   H., under a contract of sale, delivered to B. a safe, who paid a part of the purchase-money, and H. retained the title to the safe till payment of the balance of the purchase-money.  G., as landlord, sued out a distress warrant for rent, and caused this safe, which was found on the leased premises, to be seized and sold thereunder.   It was bought by P.   At the time of the sale the balance of the unpaid purchase-money was not due.   After it all became due H. brought replevin against P. for the safe.   *Held,* that H. cannot maintain an action of replevin, but should have interposed his claim before sale under the distress proceedings, in accordance with § 1317 of the Code of 1880.

2. SAME. *Property used in business of trader seized.   Claim of third person.   Section* 1300, *Code of* 1880.

   In the above case B. was carrying on the business of a jeweler for himself, and under a sign bearing his own name, and was using the safe in such business. *Held,* that the safe was liable for the rent of the premises in which B.'s business was conducted, under § 1300, Code of 1880, which provides that if any person shall transact business in his own name as a trader " all the property, stock, money, and choses in action used or acquired in such business shall, as to creditors of any such person, be liable for his debts, and be, in all respects, treated in favor of his creditors, as his property."

APPEAL from the Circuit Court of Monroe County.

HON. J. W. BUCHANAN, Judge.

In 1885 the Hall Safe and Lock Company sold to Buder Bros. an iron safe for two hundred and twenty-five dollars, retaining title thereto until the purchase-money should be paid. The payments were to be made in installments, and one hundred and thirty-eight dollars were paid in that way. Buder Bros. were engaged in the business of jewelers. Over the storehouse in which they conducted the business the sign "Buder Bros." was displayed, and therein was the safe in question, which was in daily use in carrying on the business.

On June 14, 1886, one Garth, from whom Buder Bros. rented the store in which they were carrying on their business, sued out an attachment for rent, and levied it on this safe, found on the premises. The safe was sold under the attachment and bought by George C. Paine. The Hall Safe and Lock Company had no knowledge of the levy and sale of the safe, and the balance of the unpaid purchase-money thereof was not then due. In October, 1886, all the unpaid purchase-money being then due, the Hall Safe and Lock Company demanded of George .C. Paine, the purchaser of the safe, the balance due them on the safe. On his refusing to pay it, the company brought an action of replevin against Paine to recover possession of the safe. By agreement the cause was submitted to the judge, who gave judgment for the plaintiff in replevin. The defendant, Paine, appealed.

*George C. Paine,* appellant, *pro se.*

1. When property has been attached under the provisions of chapter 50 of the Code of 1880, and a third party desires to claim the same, he must proceed as is indicated in § 1317 of chapter 50. This § 1317 gives the only remedy, and points out the manner of enforcing it. A failure to comply with it causes a forfeiture of all claims to said property. But for § 1317 all property on the demised premises would be liable to be distrained for rent. It being an innovation upon the common law, requires a strict compliance with the law before any relief can be had. To allow a party to bring the ordinary action of replevin, as in the case at bar, for property

that has been attached, advertised, sold, and delivered, under chapter 50 of the Code of 1880, would be *but* to nullify § 1317 of said chapter. Section 1317 of the Code of 1880 is but a prototype of § 1631 of the Code of 1871. The supreme court of this State has had occasion to pass upon and construe this § 1631, and has in unmeasured terms condemned the practice of bringing the ordinary action of replevin instead of making claim, as is explicitly and clearly set out in said § 1631. See *Maxey* v. *White*, 53 Miss. 80, and *Kendrick* v. *Watkins*, 54 Miss. 496. The policy of § 1631 is clearly defined and explained in 58 Miss. 300–1.

The argument that defendant in error could not consistently make the affidavit required by § 1317, because Buder Brothers had an interest in the safe to the extent of the payments made, cannot be invoked in this proceeding ; because if they did have such an interest it was only an equitable one and could only be ascertained and enforced by a court of chancery. The most that could be said would be that they were tenants in common, and if they were then the court erred in giving appellee the judgment, because of the familiar doctrine that one tenant in common cannot bring an action of replevin against the other.

2. Section 1300 of the Code of 1880 made liable to the creditors of Buder Brothers the safe and all other property that was used or acquired by Buder Brothers. J. W. Garth, the attaching creditor, was a creditor of Buder Brothers. The safe was used by Buder Brothers in their business. Then under § 1300 and the repeated decisions of this court the safe was liable. See 59 Miss. 266 ; 60 Miss. 238 ; 62 Miss. 814.

*Houston & Reynolds*, for the appellee.

1. The Code of 1880, § 2633, provides that the action of replevin shall not be maintained in any case of the seizure of property under execution or attachment when a remedy to claim the property is given in some other mode, and the party must resort to the specific mode prescribed. The " seizure of property under execution or attachment " will embrace a seizure under an attachment for rent. In *Amstead* v. *Bernard*, 62 Miss. 180, it is decided that the owner after the sale under execution or attachment may bring replevin

against the purchaser, and why may he not bring the same action if the sale was under an attachment for rent? Not because at common law all goods found on the demised premises are liable for the rent, for when the goods "are in the hands of the tenant in the way of his trade," or are left, with the knowledge or consent of the landlord, in possession of the tenant, they are not liable. When the goods on the demised premises are not liable for rent, then replevin may be brought and maintained when they are liable for the rent, then, though replevin may be brought, it cannot be maintained. This is the argument made against bringing replevin against a purchaser under an attachment for rent, and we submit that it is not sound ; the right to bring the action is one thing, and the ability to sustain it is another. We maintain that replevin can *be brought* against a purchaser under an execution, attachment, or attachment for rent ; whether an action can be sustained or not depends on the particular facts.

But the Hall Safe and Lock Company could not have maintained the special remedy under § 1317 of code.

The contract between the Hall Safe and Lock Company and Buder Bros., they having paid one hundred and thirty-eight dollars of the agreed price, vested in the latter a "*limited property or interest*" in the safe. This is apparent from the contract.

The section provides that if the tenant as to goods found on the demised premises have a limited property or interest in them, the same shall be liable to be distrained and sold for the property or interest which the tenant has.

The owner making the claim is required to make affidavit that the property claimed is not liable to distress. But if Buder Bros. had a limited property or interest in the safe, then the Hall Safe and Lock Company could not truthfully have made any such affidavit.

We submit that the safe, because of the "limited property or interest" which Buder Bros. had in it, was liable to the attachment for rent, and that the Hall Safe and Lock Company could not have maintained the special remedy under § 1317. But the Hall Safe and Lock Company had the title to the safe and the right of pos-

session, and its only remedy was by action of replevin after demand made upon the purchaser.

It will be seen that in the demand made by the Hall Safe and Lock Company there was a clear and distinct recognition of the "limited interest or property" of Buder Bros., and which had passed by the sale to appellant, Paine. The demand was for the payment of eighty-five dollars, the balance due, and, when this was refused, for the possession of the safe.

2. But refuge is sought by appellant under the sign statute. Section 1300 of Code.

There was a sign conspicuously displayed, and the parties conducting the business agreed with the notice which was given. The property covered by the sign "Buder Bros." was their property and liable for their debts to the extent of their interest in it. They were not factors, agents, or partners of the Hall Safe and Lock Company. The statute has no application to this case.

But the statute does not apply, for another reason. Garth, the landlord, was the creditor of Buder Bros., as they were of the Hall Safe and Lock Company. This court has decided, in *Dodds* v. *Pratt* (not reported), that "§ 1300 does not derange the order of priority among the creditors of the person transacting the business. The property made liable for his debts is to be subjected in the order of precedence fixed by law independently of the section."

CAMPBELL, J., delivered the opinion of the court.

If the appellee was owner of the safe it should have interposed its claim in pursuance of § 1317 of the code, and not having done so was precluded from claiming that the safe was not liable to be distrained for rent. *Gibson* v. *Lock*, 58 Miss. 298.

But aside from this, the judgment should have been for the defendant on the facts. · Buder Bros. were "*traders*" in the meaning of § 1300 of the code, and "all the property, stock, money, and choses in action used or acquired in such business," were, as to their creditors, liable for their debts by virtue of said section. Its language is plain and its meaning and purpose obvious. It first enacts that *traders*, and *all of like kind*, who employ signs, must by

the sign truly indicate the ownership, or else the property, etc., used or acquired in such business shall be liable to the creditors of him who transacts the business, and then, to meet the case of having no sign, it provides that he who transacts the business and has the property, and thus appears to be its owner, shall be treated as such, in favor of his creditors.

Where a sign is employed it must not mislead, and where there is no sign he who appears to be owner from transacting business with it or acquiring it in his business is to be so held and treated in favor of his creditors.    That is the simple scheme of § 1300. Its design is to promote honesty and secure justice, by precluding the assertion of secret claims of ownership against creditors of him who has been permitted to possess property in his business as a trader and appear to be its owner.    Prior to the enactment of this section conditional sales of personal property of any kind whereby the vendor retained the title, although the vendee had possession, were valid, where this separation of the title and possession did not continue for three years, without any writing or record.  *Ketchum* v. *Brennan*, 53 Miss. 596.    This is still the law, except as altered by the section under consideration.    By it a change was made as to the class of persons contemplated by it, and while the former law as to conditional sales with all their incidents remains as it was as to the great body of the people, it was changed by this section as to all who fall under the designation of *traders*, and they are to be treated as the absolute owners of what they use or acquire in business, so far as its liability to their creditors is concerned.    The evil of permitting a separation of title and possession was found to exist and bear its worst fruits among those called by the general designation of "*traders*," and hence the effort to correct it, as far as possible, by the just requirement of true signs, and in the absence of such *indicia* of ownership, by that springing from the possession, dominion, and control of the property.

This may operate hardly in some cases, but that is a common incident of laws which are designed for their general effect, and are to be judged by that and not by particular instances.

*Reversed and remanded.*