# CHARLESTON.

Morris *v.* Clifton Forge Grocery Co. *et al.*

Submitted February 8, 1899—Decided April 1, 1899.

Agency—*Creditors—Auctioneer—Commission Merchants.*

> Where any person transacts business as a trader with the addition of the word "agent," and fails to disclose the name of his principal or partner, as required by section 13 chapter 100 of the Code, all the property, stock and choses in action acquired or used in such business shall, as to the creditors of any such person, be liable for his debts, unless such person be a licensed auctioneer or commission merchant. (p. 200).

Error to Circuit Court, Monroe County.

Action by J. T. Morris against the Clifton Forge Grocery Company and Bowling, Spotts & Co. Judgment for plaintiff, and defendants bring error.

*Reversed.*

Logan & Patton, for plaintiffs in error.

John Osborne and A. C. Huston, for defendant in error.

English, Judge :

The questions presented by the record in this case arise out of the following facts: In the month of July, 1895, C. L. Morris, who had been engaged in merchandising in Monroe County, W. Va., made an assignment for the benefit of his creditors, and in a chancery suit, brought for the purpose of settling up the transactions of the trustee in the dèed of assignment aforesaid, the Clifton Forge Grocery Company obtained a decree against said Morris for one hundred and ninety-seven dollars and seven cents as of the 17th of March, 1896, and Bowling, Spotts & Co., one for seventy-two dollars as of the same date. The proceeds of the sale under the assignment only paid a per cent., of

the indebtedness of said Morris, leaving still due said grocery company the sum of one hundred and ninety-five dollars and seven cents, and said Bowling, Spotts & Co. of seventy-two dollars, as of March 17, 1896. After the assignment, Morris began business again at the same place in the name of C. L. Morris, Agent, and the said Clifton Forge Grocery Company and Bowling, Spotts & Co. sued out their executions under said decree, and had them levied on all the personal property held by C. L. Morris sufficient to pay off said executions and costs. A question arising as to the ownership of the property levied upon, the cases were heard together by consent, and C. L. Morris showed that his wife put one hunderd and sixty-five dollars into the hands of T. C. Lively, and his brother put into Lively's hands one hundred dollars, which amounts were turned over to Morris, upon which he started said business; that after Morris, Agent, had been doing business for some time in this way, Lively assigned his interest to J. T. Morris, who put in the one hundred dollars; that this was all the money put into the business, and the executions were not issued or levied until after this transfer. On October 29, 1897, in the case of J. T. Morris against the Clifton Forge Grocery Company and Bowling, Spotts & Co. by consent of parties, the question as to the right of property levied upon under said executions was submitted to the court in lieu of a jury upon a statement of facts agreed upon by plaintiff and defendant; on consideration whereof the court found that the right to the property was in the plaintiff, J. T. Morris, and quashed the executions, and the property was placed in said Lively's hands as receiver, who was directed to make sale of it, but was required before doing so to enter into bond in the penalty of three hundred dollars; to which judgment said execution creditors objected, excepted, and moved that the same be set aside as contrary to the law and the evidence, and that a new trial be awarded, which motion was overruled, and said execution creditors again excepted, and obtained this writ of error.

Now, among the facts agreed, those I regard as material for the determination of this case are the following, to-wit: That, after getting the two hundred and sixty-five dollars

mentioned, the said C. L. Morris carried on a general mercantile business as agent for said Lively, doing all the buying, selling, and trading as agent, which business was carried on at Pickaway, Monroe County; that no sign at all was placed at the store, nor was any notice ever published in any newspaper in said county setting out said agency, or disclosing the name of the principal or partner, although there were two papers published in Monroe County at that time as well as at the present; that in March or April, 1897, J. T. Morris bought out said Lively, and since then C. L. Morris has carried on a general mercantile business as the agent of J. T. Morris, but no sign at all setting out said agency, or disclosing his principal's name, was placed at the store, nor any notice published in any newspaper in said county; that while C. L. Morris was acting as agent for Lively he bought over four hundred dollars worth of goods from the Clifton Forge Grocery Company, and about three hundred dollars worth from Bowling, Spotts & Co.; that all of the property levied on belongs to the business of C. L. Morris as agent, and is part of the stock and business, and grows out of the two hundred and sixty-five dollars above mentioned, and the credit obtained by C. L. Morris, Agent; that in the conduct of said business said C. L. Morris signed his name "C. L. Morris, Agent," without saying for whom; that the said C. L. Morris, at the time the goods were ordered from said execution creditors, told their traveling agent that he was acting as Lively's agent, but there is no evidence that this fact was made known to the execution creditors by their respective traveling men; and, if there was such evidence, I do not regard it material, for the reason that it would not bring said C. L. Morris within the purview of our statute (section 13, chapter 100, of the Code), which is imperative, and provides that: "If any person shall transact business as a trader with the addition of the words, factor, agent, and company or & Co. and fail to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house wherein such business is transacted, and also by a notice published for two weeks in a newspaper (if any) printed in the town or county wherein the same is trans-

acted, or if any person transact such business in his own name without such addition, all the property, stock, choses in action, acquired or used in such business shall as to the creditors of any such person be liable for the debts of such person. This section shall not apply to a person transacting business under a license to him as an auctioneer or commission merchant." There can be no question that C. L. Morris in the business he was pursuing could be properly classed under the general description of "trader." Webster defines this word as meaning "one engaged in trade or commerce; one who makes a business of buying and selling or of barter; a merchant." The agreed statement of facts shows that he carried on a general mercantile buisness and that the property levied on under said executions belonged to said business and was part of the stock in said business. We must therefore hold that the circuit court erred in holding that the property levied on was not subject to the debts of the plaintiffs in error. See *Hogue* v. *Turner*, (Va.) 32 S. E. 291.

It is contended by counsel for the defendant in error that the record does not show that the amount in controversy does not exceed one hundred dollars, exclusive of costs, and for that reason this Court cannot take jurisdiction of this case. Now, the real question involved in this case was the right to the property levied upon, and whether it was subject to levy and sale under the executions levied thereon. The property levied on consisted of one bay horse six years old, one bay horse seven years old, one bay mare ten years old, one buggy, one wagon harness, two ladies' saddles, three men's saddles, one open Franklin stove, one set buggy harness, two cases boots, and two chamber sets. The executions in the hands of the officer aggregated two hundred and sixty-seven dollars and nine cents. The sheriff, in performance of his duty, is presumed to have taken enough to satisfy his judgments, and common experience would teach us that said property would be worth one hundred dollars; and, in addition to this, we have the estimate of the circuit court. When he appointed a receiver to take charge of and sell this property, he required a bond of three hundred dollars, which he would not have done if the property did not exceed in value one

hundred dollars. If testimony had been taken to show the value of the property, we would have had to rely on the opinion of men at last, and here we have the opinion of the sheriff and the judge both acting under oath, and I concluded the amount in controversy is sufficient to give jurisdiction.

The sole question in the case is whether the property levied on under the statement of facts agreed was liable to levy for and satisfaction of the debts of C. L. Morris under the provisions of section 13, chaper 100 of the Code; and, it appearing that said C. L. Morris transacted his business as a trader, with the addition of the word "agent," without complying with the requirements of said section, my conclusion is that the property acquired or used by him in said business was liable for his debts, and the court erred in holding that it was not so liable, and in quashing the executions levied on the same for the debts of said C. L. Morris. The judgment complained of is reversed, and the cause remanded.

*Reversed.*