## MERCHANTS' & FARMERS' BANK *v.* SCHAAF.

### [66 South. 402.]

1. SALES. *Conditional sales. Rights of creditors. "Trader."*

Claimant shipped pianos, organs, and other musical instruments to M. under an unrecorded contract, providing that M. should hold them on consignment for claimant's benefit, should insure them, pay all taxes and remit all cash collected. Notes were received on sales or leases, to claimant until settlement was made for the property so shipped, and M. gave a receipt for each instrument agreeing to hold it, and the proceeds of any sale or lease, for the claimant, and to return the instrument on request. M. opened a place of business in his own name, displayed the instruments, with tags attached, indicating that they were for sale, insured the instruments as if owned by him, and had full control of the business. There was no sign at his place of business disclosing the name of the owners of the stock and nothing to indicate that he did not own it and have a right to sell it. In such case he was transacting business in his own name as a trader or otherwise, and the instruments were property acquired and used in the business he was conducting, within the provisions of section 4784, Code 1906, providing, that if a person shall transact business as a trader or otherwise, with the addition of the words "agent, factor," etc., and shall fail to disclose the name of his principal or partner by a sign placed conspicuously, or if any person shall transact business in his own name without any such addition, all property, stock, etc., used or acquired in such business, shall be liable for his debts, and treated in favor of his creditors as his property; hence such instruments were liable for M's debts.

2. TRADER. *Definition.*

A "trader" is one who is engaged in trade or commerce; one who makes it a business to buy, sell, or exchange goods; one who has transactions as a dealer in bartering and trafficking.

APPEAL from the circuit court of Winston county.
HON. JAS. A. TEAT, Judge.

Suit by the Merchants' & Farmers' Bank, against W. K. Martin, in which Adam Schaaf interposed as claimant

to the property levied upon by attachment. From a judgment for claimant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*W. W. Magruder,* for appellant.

The real owner who furnishes mercantile goods, be they groceries or pianos, through possession of which ostensible ownership in another is indicated and fictitious credit created, must demand and secure at his own peril compliance with the statute; and any other construction would absolutely destroy it. Otherwise, it would become but "sounding brass and a tinkling cymbal." Yet, this is exactly the effect of the trial court's ruling. If that narrow view of the statute should be sustained by this court, it would be to do for the first time that which the court has repeatedly declared should not be done, to engraft an exception upon it, an exception in the proportion of one hundred per cent. In *Gumbel* v. *Koon,* 59 Miss. 246, Judge COOPER announced and emphasized that no exceptions should be engrafted upon this statute. That case does not require or intimate that knowledge upon Gumbel's part of the violation of the statute by Bullington or knowledge of noncompliance therewith was a prerequisite to its operation. Such a suggestion is necessarily excluded by the ringing declaration of the court that because of noncompliance with the statute, the property was in law Bullington's property and subject to the demands of his creditors. Even though Bullington was Gumbel's agent and the creditors knew it, the statute must be obeyed or its penalty paid. The opinion in that case further declares in lucid language: "The object of the statute was to prevent the assertion of secret claims to the property, as against creditors of the person who seems to be the owner of it, evidenced by his dealings with it; and it conclusively fixes the ownership to be in the person whose sign is exhibited at the place where the business is conducted, or who, in the absence of any

sign, is the manager of the business,'' or quoting freely
as applies to this case, ''it conclusively fixes the owner-
ship to be in the person, who, in the absence of any sign,
is the manager of the business.''

In *Quin* v. *Myles,* 59 Miss. 375, it is specifically de-
clared to be incumbent upon the true owner ''to see that a
sign was conspicuously posted, giving exact information
as to the true ownership of the property.'' *Dale* v. *Hata-
han,* 85 Miss. 49; *Loeb* v. *Morton,* 63 Miss. 280; *Shannon*
v. *Blum,* 60 Miss. 828; *Bank* v. *Studebaker,* 71 Miss. 544;
*Paine* v. *Hall,* 64 Miss. 175; *Hall* v. *Berg,* 65 Miss. 187.

*McLean & Carothers,* for appellant.

Appellant relies upon the proposition of fact that the
attachment debtor, Martin, was transacting business as a
trader, in his own name, that the property levied upon
was used or acquired in the business, and that there was
no sign indicating who was the owner of the business,
and appellant relies upon the following authorities to sup-
port his contention. *Section* v. *Koon,* 59 Miss. 264; *Quin*
v. *Myles,* 59 Miss. 375; *Shannon* v. *Blum & Co.,* 60 Miss.
828; *Loeb & Blum* v. *Morton,* 63 Miss. 280; *Payne* v. *Hall
Co.,* 64 Miss. 175; *Hamblet* v. *Steen,* 65 Miss. 474; *Hall
Co.* v. *Berg,* 65 Miss. 187; *Citizens Bank* v. *Studebaker
Bros.,* 71 Miss. 544; *Meridian Co.* v. *Ormond,* 82 Miss.
758; *Dale* v. *Harahan,* 85 Miss. 49; *Columbus Buggy Co.*
v. *Turley & Parker,* 73 Miss. 529; *Parry Mfg. Co.* v.
*Lowenburg,* 88 Miss. 532.

*T. F. Kelly,* for appellee.

The statute is strictly construed because in deroga-
tion of the common law. It applies to two classes. One
is where a man does business as a ''trader'' with a sign
without disclosing all the owners. The other is where he
does business as a ''trader'' in his own name without a
sign.

As said by one of the courts in *Hamblet* v. *Steen,* 65
Miss. 479: ''A statute which produces forfeiture of es-

tate, or which is so harsh and penal in its consequences as to arbitrarily condemn the property of one persosn to pay the debts of another, when no fraud or wrong is suggested, intended or accomplished as to others, by the use which is being made of the property by its owner, ought not in my judgment to be applied in a doubtful case. It should be construed strictly and its application limited to cases that are brought fully and clearly in every respect within its letter.''

Martin was not a trader in contemplation of the lawmakers. ''A trader is a person who trades, particularly a person whose 'business it is to buy and sell goods.'' Standard Dictionary. Martin bought no goods whatever. The goods he got were merely consigned to him under a contract to sell. ''He must be engaged in business as a trader or in *ejusdem generis.''* *Yates* v. *Taylor,* 63 Miss. 598.' Hence it has been held by this court that an insurance agent is not a trader. *Lyons* v. *State,* 86 Miss. 261. Nor one operating a planing mill. *Willis* v. *Memphis Gro. Co.,* 19 So. 101. Nor one milling and ginning in the country. *Yates* v. *Taylor,* 63 Miss. 598.

So it has been held that in determining whether or not a person is a ''trader,'' the important question is whether, being a seller, he is also a buyer. *Graves* v. *Kilgore,* 27 Me. 489. And it has been held that a traveling salesman is not a ''trader.'' *Witner* v. *Miller,* 12 Pa. Co. Ct. R. 363. A water company is not a ''trader.'' 98 Fed. 690. A laundry is not a ''trader.'' 117 Fed. 560. Nor, as a railroad car furnishining goods to employees. *State* v. *Railroad,* 63 Miss. 105.

A significant fact is that Martin procured no privilege license to operate a business at Louisville. If he was ''operating a business'' he thus placed himself where he could not legally collect for any sale made, if the customer resisted. The first act of one opening a store is to procure his privilege license so as to protect himself. This fact shows he was merely storing these pianos, and

the fact, as before stated, that the bank took a mortgage on the pianos to secure their lien is corroborative and conclusive evidence that it also considered the goods as merely stored and not a going business. How could the mortgage secure the bank's debt if the pianos were being sold to a third person all along?

Before this statute can be invoked, it must be conclusively shown that Martin was operating a regular piano store; buying, selling and trading in pianos at Louisville. The mere storing of property to protect it from the weather or for safe keeping does not constitute doing business as a trader. *Burnell* v. *Herron,* 16 So. 356. The bank's proof failed to disclose a single person who bought a piano at the alleged store. Cornwell, after swearing that nothing was sold, did finally claim that he thought one organ was sold. But a single sale is not sufficient to make one a "trader." *Dunham* v. *Slidell Liquor Co.,* 94 Miss. 140.

In every reported case construing this statute that the writer has found, the debtor had a fixed and regular place of business and the goods were subsequently brought to it and intermingled with the debtor's goods with the consent, actual or implied, of the owner. No case is reported where the goods were sought to be held, and that alone constituted the entire business. It seems that a fixed going business is a condition precedent. Martin was not a trader when these goods came into his possession.

This is evidently why this court has clearly stated that goods placed in the hands of a factor or auctioneer, to be sold for the benefit of the owner, do not fall within the statute. *Shannon* v. *Blum,* 60 Miss. 828.

I am aware that the statute was applied in the last-mentioned case, and that opposing counsel rely upon it. But the court explains why it applied the statute, as follows: "There is evidence that would warrant the belief that the property here involved was intentionally so

placed by the owner in the custody of the trader as to become either a part of their stock, or by appearing to be so, to furnish them with a basis for credit. The verdict of the jury on the question of fact as to whether such was the nature of their custody must be construed as finding it in the affirmative.''

Second: Had Martin ''acquired the goods in the business'' he was transacting? Now, it is agreed that claimant did not know that Martin was engaged in business in his own name, and that claimant did not know that Martin was operating a music store. He could not have acquired the goods from claimant in the course of a business which claimant did not know existed. If Martin is held to have acquired these goods by any means it surely was by means other than in course of the business he is claimed to have conducted. In fact, it is admitted in the course of another separate and distinct business, the business of a traveling salesman selling from the Chicago office of Adam Schaaf for the account of Adam Schaaf, and subject to the approval of Adam Schaaf, such pianos, organs, etc., as he could place upon the terms offered by Adam Schaaf. He acquired these goods not in the course of a business conducted in his own name, but as a traveling salesman for Adam Schaaf.

These goods were never acquired by Martin in his business as required by the statute invoked. This is settled beyond all cavil. *Longino* v. *Bank,* 76 Miss. 395; *Adams* v. *Berg,* 67 Miss. 234; *Hall* v. *Berg,* 56 Miss. 184.

''Where the trader neither 'acquires' any interest in the property nor the right to 'use' it in his business, the mere fact of possession, even though it be permitted by the owner, is not effectual to bring the property within the operation of the statute.'' *Hall* v. *Berg, supra.* And ''conducting the business'' is not sufficient to constitute ''transacting business in his own name,'' as intended by the statute. *Harris* v. *Robson,* 68 Miss. 506.

REED, J., delivered the opinion of the court.

About the 1st of January, 1912, W. K. Martin rented a part of a store in Louisville, Mississippi, and opened business, in which he handled and dealt in pianos, organs, and musical instruments. These instruments were arranged on display in an attractive way in the part of the building occupied by him, which was the rear of the store, the front being used by his lessor, Mr. Cornwell, in carrying on a general mercantile business. The pianos were grouped in a semicircle with a piano player in the center. Attached to each piano was a tag or placard giving the selling price in letters large enough to be read from the front door. Mr. Martin had full control of the business he was conducting. He was assisted by an employee. He also asked Mr. Cornwell to help him to make sales. He rented the place of business in his own name, opened an account with the bank, upon which he checked in his own name, and took out insurance against fire on his stock of goods in his own name. The property insured being described in the policy as follows:

"His entire stock of pianos, organs, stools and covers. Said stock consisting of not less than eight pianos, six organs, stools and covers to match, now situated in the storehouse of I. F. Cornwell & Co., in the town of Louisville, Mississippi."

No license to carry on the business was issued to Martin. There was no sign at Martin's place of business to disclose the name of the owner of the stock of merchandise, to wit, the musical instruments, or to show that there was another person as principal or partner connected with Martin in the business. There was nothing to indicate that Martin did not own and did not have the right to sell or trade all of the musical instruments in this store, which he conducted in his own name. In January, 1912, Mr. Martin negotiated a loan from appellant, Merchants' & Farmers' Bank. He executed a deed of trust on the pianos and other musical instruments to se-

cure his indebtedness. After engaging in the business in Louisville for about two months Mr. Martin left that town and vicinity, and his whereabouts had not been ascertained at the time of the trial of the case. In May, 1912, appellant brought suit by attachment against Martin. In the execution of the writ, six pianos, two organs, together with piano stools, scarfs, and covers, were levied on. Appellant appears to have abandoned any right or claim under the deed of trust. The attachment proceeded to judgment in favor of appellant. Then appellee, a corporation engaged in the manufacture and sale of pianos, and located at Chicago, Illinois, interposed its claim to all of the property levied on. The claimant's issue was made up, and there was a jury trial. A peremptory instruction was given by the trial judge, directing verdict for claimant. Appellee abandoned its claim to the organs, and the judgment was entered only for the pianos, stools, scarfs, and covers in its favor. Judgment was entered, giving the organs to appellant.

We find in the record an agreed statement of facts, and we give the same in full as follows:

"In order to save time and trouble of taking depositions, it is agreed by and between counsel for the Merchants' & Farmers' Bank and by counsel for Adam Schaaf that the pianos and other property involved in this lawsuit, as described in claimant's affidavit, were shipped to W. K. Martin at Louisville, Mississippi, by Adam Schaaf, the claimant, under and by virtue of a contract entered into between Adam Schaaf and said W. K. Martin, on January 15, 1911, which contract is attached hereto and made part of this agreement as Exhibit A hereto; that on delivery of the pianos involved in this litigation by Adams Schaaf to W. K. Martin the latter executed receipts therefor, one receipt for each piano, the same being filed herewith as Exhibits B, C, D, E, F, and G, and made a part hereof; that said receipts were sent by said Martin to said Schaaf for said pianos; that if said Mar-

tin operated a business at Louisville, in any other way
than in accordance with said contract and receipts, it
was without the knowledge or consent of said Adam
Schaaf; that no payment has been made to Adam Schaaf
on said pianos involved in this litigation; that Adam
Schaaf had no knowledge of the mortgage or pledge of
the pianos to said plaintiff; that said bank is not pre-
cluded by this agreement from objections to the exhibits
herein for incompetency, irrelevancy, or immateriality,
or any other specific ground not precluded by this agree-
ment.

"It is also understood that evidence may be offered by
both parties on all points not covered by this agreed state-
ment."

The contract of sale provided that the pianos furnished
to Martin by appellee were to be held by him on consign-
ment and for appellee's benefit. Martin was to insure
the instruments against loss by fire and to pay all assess-
ments and taxes against them while in his possession.
All money and notes and other property received by him
from the sale of pianos belonged to appellee until settle-
ment was made therefor. He was to remit promptly cash
collected or approved customers' notes or leases, which
were to be subject to appellee's approval. The receipts
referred to in the agreed statement of facts provided that
Martin would hold the piano received, on sale for appel-
lee until sold, and that the proceeds of sale of the lease
thereof was to be the property of appellee, and that any
time before a piano was sold or leased, Martin would,
upon the request of appellee, return the piano.

Appellant contends that the debtor, Martin, was trans-
acting business as a trader in his own name, without any
sign indicating who was the owner of the business, and
that the property levied on under the writ of attachment
and claimed by appellee was used and acquired in such
business, and was subject, as his property, to the satis-
faction of his indebtedness. Appellant relies on section

108 Miss.9

4784 of the Code of 1906. This section is in the chapter on statute of frauds, and is under the subject, "Business Sign, and What to Contain." It has been quite well known as section 1300 of the Code of 1880. It is section 4234 of the Code of 1892. It reads as follows:

"If a person shall transact business as a trader or otherwise, with the addition of the words 'agent,' 'factor,' 'and company,' or '& Co.,' or like words, and fail to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house where such business is transacted, or if any person shall transact business in his own name without any such addition, all the property, stock, money, and choses in action used or acquired in such business shall, as to the creditors of any such person, be liable for his debts, and be in all respects treated in favor of his creditors as his property."

There have been numerous decisions of this court construing this section. In one of the earliest cases (*Gumbel* v. *Koon*, 59 Miss. 264), Judge COOPER, delivering the opinion of the court, said:

"The object of the statute was to prevent the assertion of secret claims to property, as against creditors of the person who seems to be the owner of it, evidenced by his dealings with it; and it conclusively fixes the ownership to be in the person whose sign is exhibited at the place where the business is conducted, or who, in the absence of any sign, is the manager of the business."

Shortly thereafter, Judge CHALMERS, in rendering the opinion of the court in *Quin* v. *Myles*, 59 Miss. 375, referred to *Gumbel* v. *Koon*, and said:

"We have heretofore held that we would enforce this statute as it was written, without regard to whether the debt sought to be collected under it were antecedent or subsequent to the inauguration of the business, or whether creditors had actually been misled or not."

In the case of *Paine* v. *Hall Safe & Lock Co.*, 64 Miss. 175, 1 So. 56, wherein it was held that a safe, used in the

business of a jeweler, for which the purchase money had not been paid in full and in which the seller had retained title, was liable for rent of the premises under the statute, Judge CAMPBELL, delivering the opinion, said: .

"Where a sign is employed it must not mislead, and where there is no sign he who appears to be owner from transacting business with it or acquiring it in his business is to be so held and treated in favor of his creditors."

Judge COOPER, delivering the opinion of the court in *Hall* v. *Berg,* 65 Miss. 187, 3 So. 372, thus commented on the statute:

"The field of the operation of the statute is a broad one, and within it lie all the evils intended or necessary to be relieved against. If a trader, by any sort of a contract, acquires the property with which he deals, the statute, in favor of his creditors, cuts off any secret claim which the party from whom it was acquired may have reserved by his contract, as where a conditional sale is made."

Appellee argues that Martin was not transacting business in his own name "as trader or otherwise." He was transacting business. Was he doing so as a trader?

A trader is one who is engaged in trade or commerce; one who makes it a business to buy, sell, or exchange goods; one who has transactions as a dealer in bartering and trafficking. We quote as follows from Words and Phrases, page 7049:

"A trader is one engaged in trade or commerce; one who makes a business of buying and selling, or of barter; a merchant. One who was engaged in a general mercantile business was a trader, within Code, .ch. 100, par. 13, providing that 'if any person shall transact business as a trader, with the addition of the words "factor," "agent," and "company," and fail to disclose the name of his principal or partner,' all of the property, stock, or choses in action acquired or used in such business shall be liable for the debts of such person. *Morris* v. *Clifton Forge Grocery Co.,* 46 W. Va. 197, 32 S. E. 997, 998."

We quote again from Words and Phrases, page 7052: "A smuggler may be a 'trader,' within St. 1 Jac. I, ch. 15, par. 2, as being a person who seeks his trade or living by buying and selling, although such buying and selling be illegal. *Cobb* v. *Symonds,* 5 Barn. & Ald. 516."

It was said by PETERS, C. J., in delivering the opinion of the court in *Sylvester* v. *Edgecomb,* 76 Me. 499, that "any general definition of the word 'trader,' would fail to suit all cases. Each case has its peculiarities."

The facts in this case certainly show that Martin was engaged in transacting business as "trader or otherwise" within the meaning of the statute. He had a place of business. He had merchandise in his possession, on display in his store. He was offering it for sale. He was selling it and attempting to make sales of it. He had transactions as a dealer. He was in commercial business. He was engaged in trade. He was a trader.

It is also clear to us that the property levied on was acquired in and used in the business he was conducting. Such property was liable for his debts. It should be considered in all respects in favor of his creditors as his property. This liability is not relieved by reason of Martin's agreement with appellee and the receipts he gave when the pianos were delivered to him. The contract was not recorded. Martin's creditors had no notice of the agreement. They were not informed that he held and used for the pianos for the secret benefit of another. The evidence disclosed that the instruments were intrusted to him to be sold. Martin had the property in his possession with the right to sell and deliver it. The property was subject to the operation of the statute. *Shannon* v. *Blum,* 60 Miss. 828; *Columbus Buggy Co.* v. *Turley & Parker,* 73 Miss. 529, 19 So. 232, 32 L. R. A. 260, 55 Am. St. Rep. 550.

The court erred in granting the peremptory instruction in favor of appellee.

*Reversed and remanded.*