In re ELVIS PRESLEY HEIGHTS SUPERMARKET, INC., d/b/a Pearson's Supermarket, Debtor.

Jacob C. PONGETTI, Trustee, Plaintiff,

v.

Dalton LACKEY, Fannie Lackey, Hoyle Pearson, Joyce Pearson, Roy Acton, Martha Acton, R. L. Estes Typewriter Company, Inc., Al-Com Systems, Inc., d/b/a Safe Alarm, Tupelo Coca-Cola Bottling Company, Defendants.

Bankruptcy No. S80–10431.
Adv. No. 80–1113.

United States Bankruptcy Court,
N. D. Mississippi.

Sept. 10, 1981.

Jacob C. Pongetti, Columbus, Miss., for plaintiff.

Billy W. Shelton, Tupelo, Miss., for defendants, Hoyle Pearson, Joyce Pearson, Roy Acton and Martha Acton.

David R. Sparks, Tupelo, Miss., for defendants, Dalton Lackey and Fannie Lackey.

Michael B. Gratz, Tupelo, Miss., for defendant, R. L. Estes Typewriter Co., Inc.

Holland, Ray & Upchurch, P. A. Tupelo, Miss., for defendant, Tupelo Coca-Cola Bottling Co.; Reed Hillen, Tupelo, Miss., of counsel.

### MEMORANDUM OPINION

EUGENE J. RAPHAEL, Bankruptcy Judge.

At the time the petition herein was filed, the debtor operated a retail store in Lee County, Mississippi under the trade name of Pearson's Supermarket. This adversary proceeding was commenced by a complaint filed by the trustee, seeking to establish that all of the equipment located in or about debtor's store premises was the property of the trustee, free and clear of any security interest or any claim of title in and to any of said equipment on the part of any of the defendants. All of the defendants were served with process and all have contested the trustee's claims except the defendant, Al-Com Systems, Inc., which has defaulted. The claims of the individual defendants, though not identical, are related and will be dealt with in one section of this opinion. The claim of Tupelo Coca-Cola Bottling Company and of R. L. Estes Typewriter Company, Inc., will each be considered in separate portions of the opinion.

*The Lackeys, The Pearsons and The Actons*—On or about August 27th, 1977 Dalton Lackey and Fannie Lackey (hereinafter referred to as the Lackeys) sold to Hoyle Pearson and Joyce Pearson (hereinafter re-

ferred to as the Pearsons) and to Roy Acton and Martha Acton (hereinafter referred to as the Actons) certain store equipment located in a supermarket which was subsequently operated by the debtor. The Pearsons and the Actons executed a promissory note, dated August 27th, 1977, to the order of the Lackeys, in the amount of $26,000.00 with interest after date until paid at the rate of 7¼% per annum "payable Three Hundred Five and 24/100 ($305.24) per month including principal and interest for 120 months".

Simultaneously, the Pearsons and the Actons executed a deed of trust securing payment of said note. This deed of trust was on a printed form intended for use in connection with real property rather than personal property. The printed word "property" is stricken and the word "equipment" is substituted, so that the deed of trust conveys to the trustee "the following described equipment in Lee County, State of Mississippi, to-wit:". Then follows a long list of the equipment covered by the deed of trust, approximately fifty items. Some of the items are meticulously described by kind, manufacturer's name and serial number, such as "12′ frozen vegetable box-Warren Serial # GA–157–1374". Others are less completely described, such as "Ice Maker Frigidaire". Still others (and they are fairly numerous) are described by generic words only, such as

"Produce Table

Calculater Machine

1 Office Desk

1 Office Chair

Stocking Cart"

No location is stated for these items of equipment other than "in Lee County, State of Mississippi". The use of a real property deed of trust form for this security arrangement resulted, of course, in the omission of a number of provisions, usual in personal property security agreements, which might have given the Lackeys better protection than they have been afforded by this instrument. The document does contain a provision that "Hereinafter whenever property appears, it is to be deemed to be the described equipment". There is no provision in the deed of trust, however, with regard to after-acquired property, or with regard to substitution of one item for another, nor is there any coverall provision, such for example, as "all other equipment used by the debtors in their business".

A U. C. C. financing statement, or the equivalent, a copy of the deed of trust, was filed in the office of the Chancery Clerk of the appropriate county. However, there was no U. C. C. filing in the office of the Secretary of State.

The equipment described in the deed of trust was located in retail store premises and was used in a business conducted in said premises under the trade name of Pearson's Supermarket. It was not entirely clear from the evidence whether the Pearsons and the Actons operated this business jointly, or whether only the Pearsons were involved in that operation.

On November 28th, 1977, a charter of incorporation was issued to Elvis Presley Heights Supermarket, Inc., and thereafter the business was conducted by that corporation (debtor herein). However, the business was carried on, as before, under the trade name of Pearson's Supermarket and the business sign on the outside of the store premises continued to read "Pearson's Supermarket". It was the testimony of both the Pearsons and the Actons that title to the equipment in the store (the same equipment described in the Lackeys' deed of trust) was never transferred to the corporation, but remained in the Pearsons and the Actons.

Subsequently, there was a fire which destroyed some of the items of equipment. Insurance on this equipment was carried in the names of the Pearsons and the Actons, and they were the ones who received the insurance proceeds. Although there was a loss payable clause in favor of the Lackeys, they did not receive any of the insurance proceeds. The Pearsons and the Actons

used the insurance proceeds, or part of said proceeds, to purchase additional equipment to substitute for the items which had been burned up. The Lackeys claim in this proceeding that these replacements are covered by their deed of trust.

I find that both the original items listed in the deed of trust, and the replacement items were the property of the Pearsons and the Actons and that, as between them and the debtor corporation, the corporation has no interest in the equipment. Whether the replacement items are covered by the Lackeys' chattel deed of trust need not be decided, for reasons which will hereafter appear.

There is no doubt, however, and I so find, that both the items listed in the chattel deed of trust and the replacement items purchased after the fire were, at the time the petition was filed, located in the store premises where the business known as Pearson's Supermarket was conducted and were used by the debtor in the operation of that business and that the Lackeys, the Pearsons and the Actons all knew it. There is also no doubt, and I so find, that there was no sign in or on debtor's premises indicating that the equipment located there was the property of anyone other than the debtor. Based on that factual situation, the trustee claims that all of the equipment used in the debtor's business is covered by the Mississippi Business Sign Statute (Miss. Code of 1972, Section 15–3–7); that under that statute, all property used in the debtor's business is, as to creditors of the debtor, to be treated as property of the debtor, unless there was a sign at the premises indicating that it was the property of someone else, or, in the alternative, recording or perfection of a security interest under the provisions of the Uniform Commercial Code; and that, in his status as an ideal judgment creditor, 11 U.S. Code Section 544(a), he is entitled to all the benefits conferred on creditors of the debtor by the Mississippi Business Sign Statute.

The effect of the Mississippi Business Sign Statute on the factual situation stated above is most plainly stated, perhaps, in the case of *Paine v. Hall's Safe & Lock Co.*, 64 Miss. 175, 1 So. 56. That case, and others which follow it, make it clear that the absence of a sign indicating ownership or the existence of a security interest in the store fixtures and equipment in someone other than the debtor, gives debtor's creditors and its trustee in bankruptcy the right to treat the store fixtures and equipment as though they were the unencumbered property of the debtor. Later cases carve out an exception where a bill of sale, chattel mortgage or other instrument has been properly recorded. Unfortunately, all of these cases were decided before the advent of the Uniform Commercial Code in Mississippi in 1968. This court has been assuming that, when the opportunity arises, the Mississippi Supreme Court will hold that filing of a U. C. C. financing statement in the appropriate filing office or offices is sufficient to do away with the need for a business sign, just as recording was, prior to the adoption of the Uniform Commercial Code. We do not yet have any guidance from the Mississippi Supreme Court, however, as to how completely and in what detail the financing statement must describe the property, or as to where filing must take place. For example, must there be complete compliance with sections 75–9–401 and 75–9–402 of the Mississippi Code of 1972, or will something less suffice? Will a description of the property by type (such as "equipment") be sufficient to satisfy the Sign Statute, or will there have to be a more complete description of the items involved?

In the present case, we need not be concerned with the question last posed, since what was filed was a copy of the chattel deed of trust. But we must face squarely the question of the place of filing. Where, as here, the property involved is equipment (other than equipment used in farming operations), filing is governed by subsection (c) of Section 75–9–401 of the Mississippi Code of 1972. That subsection requires filing "... in the office of the secretary of state and in addition, if the debtor has a

place of business in only one (1) county of this state, also in the office of the chancery clerk of such county . . . . . ".

■ I hold that filing of a security agreement or financing statement will act as a substitute for a sign and is to be deemed to be compliance with the Business Sign Statute, just as the recording of a chattel mortgage or deed of trust would formerly have been. But I also hold that, in order to be accepted as a substitute for recording and for the sign, filing must take place in all of the offices where filing would be necessary in order to perfect a security interest in the kind of property involved. Here, the primary place to file was in the Secretary of State's office; and, since the debtor operated in only one county, filing in the Chancery Clerk's office would also have been necessary. Although filing did take place in the latter office, there was no filing in the office of the Secretary of State. Since such filing would have been necessary to perfect the Lackeys' security interest in the store equipment as against creditors of the debtor, there has not been sufficient filing to cure the absence of a business sign showing that the equipment in the store was not the property of the debtor. The trustee, as an ideal judgment creditor, may assert the rights of creditors under the Sign Statute. *Re: Waynesboro Motor Co.*, 60 F.2d 668 (5 Cir. 1932). The trustee, therefore, holds title to all of the equipment in or about the debtor's store premises, free and clear of any interest of the Lackeys in such equipment.

■ With respect to the Pearsons and the Actons, the rights of the trustee are equally clear. They claim that the equipment in the premises was purchased by them, that it was never conveyed to the debtor, and that they are the owners of it. But there was no sign anywhere on debtor's premises indicating such ownership and there was nothing on record in the Secretary of State's office or the Chancery Clerk's office showing such claim to ownership. Admittedly the equip-

ment in the store was, with the knowledge and the acquiescence of the Pearsons and the Actons, being used in the debtor's business. Accordingly, I hold that the trustee holds title to all of the equipment in the debtor's store premises, free and clear of any interest claimed therein by the Pearsons and the Actons.

*R. L. Estes Typewriter Company, Inc.* —Among the items of personal property located in debtor's business premises at the time the petition was filed were one Tec Scale, serial number 9H6340, one Tec Printer, serial number 9D252 and one Jay cash register, serial number 77900101. These items were the property of R. L. Estes Typewriter Company, Inc., of Tupelo, Mississippi (hereinafter referred to as Estes) and were the subject of a written agreement of lease (Exhibit 9) signed by both debtor and Estes and dated July 20th, 1980. Estes claims that this was a so-called "true lease" and not a security agreement. There is considerable doubt as to this, since the lease on its face shows total cost of the equipment to the lessor of $5,675.36 and calls for an immediate down payment of $2,400.02, plus 22 monthly payments of $148.87, which would make the total rental come within twenty cents of the total cost to the lessor. However, this question was not litigated, and the court will not decide it.

It is undisputed that the debtor was engaged in the business of selling merchandise at retail, that Estes knew it, that these three items were used in the debtor's business, that they were located in the debtor's business premises, that the lease agreement was not recorded, and that no attempt was made to comply with the filing provisions of the Uniform Commercial Code. The question for decision is whether there were signs on these items, or at debtor's premises, placed conspicuously and in letters easy to read, showing that these items were the property of Estes (Mississippi Code of 1972, Section 15–3–7).

■ There *were* signs on these machines, gummed labels which were affixed to them.

In the case of the cash register, the label was so placed that it would be necessary to raise the lid at the bottom of the machine in order to see it. It is plain therefore that the sign on the cash register, even if it had otherwise complied with the statute, was not "placed conspicuously at the house where such business is transacted".

There were gummed labels also on the scale and the computer. These were affixed to the side of the machine and were plainly visible. The label bore, in the center, the name of R. L. Estes Typewriter Company, Inc., in reasonably large lettering, the inventory control number, and the date it was purchased by Estes. Assuming, without deciding, that the labels on the scale and on the computer were "placed conspicuously", they nevertheless were not sufficient compliance with the Business Sign Statute because, while they might indicate Estes was the source from which these items were obtained, they contained no language to show that ownership of the property was in Estes, rather than in the debtor.

Accordingly, I hold that the trustee has title to the scale, the computer and the cash register free and clear of any claim to them by Estes.

*Tupelo Coca-Cola Bottling Company* —The final item to be dealt with is the refrigerated drink box which, like the other items mentioned in this opinion, was located in the debtor's business premises at the time the petition was filed and had been regularly used in the debtor's business. This box was not of the coin-operated type. It was an upright box with sliding doors, in which bottled or canned drinks were displayed, and from which they could be removed by the debtor's customers.

This box had been placed in debtor's business premises pursuant to a written agreement, dated December 19th, 1979 (Exhibit 20). The agreement was purely one of loan. No rental or other charge was made for the box, except that debtor agreed to pay any taxes assessed on the box and assumed liability for any damage to the box other than from normal wear and tear and usage. The agreement was cancellable by either party on five days written notice. The agreement was not recorded, nor was there any U. C. C. filing with respect to it.

There was a flashing, electric sign on the box, displaying the name "Coca-Cola". There was not, however, any sign on the box, or elsewhere on debtor's premises, indicating that Tupelo Coca-Cola Bottling Company was the owner of the box.

Drink boxes have been given special treatment in the Mississippi Sign Statute. The statute was amended in 1956 by the insertion of the following language:

"However, the provisions of the section shall not apply to a refrigerated box, vending machine or other container when placed by a person, firm, or corporation in a store, mercantile establishment, or other place of business to be used therein, where said refrigerated box, vending machine, or other container is plainly marked with a sign, painted on or attached to and prominently displayed on such property, *showing said property to be the property of the person*, firm, or corporation, *placing same therein*". (Emphasis added).

This amendment spells out in plain, modern English for "refrigerated boxes, vending machines or other containers" exactly what the courts have been saying is the meaning of the section with regard to personal property generally (except that with respect to other types of property the sign need not necessarily be on or attached to the property itself).

Quite clearly, a sign that says merely "Coca-Cola", no matter how prominently displayed, does not show that the box is the property of Tupelo Coca-Cola Bottling Company. The trustee is the owner of this box, and may dispose of same, free and clear of any interest claimed therein by Tupelo Coca-Cola Bottling Company.

The trustee will submit an appropriate order or orders.